PEOPLE, Respondent, v. WEILER, Appellant. (Supreme Court, Appellate Division, First Department. December 24, 1903.) Proceeding by the people of the state of New York against David Weiler. D. Welch, for appellant. H. S. Gans, for the People. PER CURIAM. Judgment affirmed.

LAUGHLIN, J., dissents.

McLAUGHLIN, J. (dissenting). The defendant appeals from a judgment convicting him of a violation of section 675 of the Penal Code, for which he was sentenced to pay a fine of $50, or, in default thereof, stand committed not exceeding 10 days. The judgment appealed from is about to be affirmed, and I am unable to agree with a majority of the court for the following reasons: The specific charge made in the complaint upon which the defendant was tried and convicted is that he, on the 27th day of March, 1903, followed the complainant from place to place in the public streets, and at his place of business and other places, and thereby annoyed and interfered with his peace and comfort, in violation of section 675 of the Penal Code. There is substantially no dispute as to the facts. A criminal proceeding was pending before one of

the magistrates of the city of New York, and the complainant Braker was desired as a witness. For the purpose of locating him, to the end that a subpœna might be promptly served upon him when his presence was desired as such witness, a detective agency, duly licensed under chapter 422, p. 1120, of the Laws of 1898, was employed to keep track of him. This agency had in its employ, among others, the defendant; and he was detailed to watch Braker for the purpose above stated, which he did from the 23d to the 27th of March, when the subpœna was served. The method employed by the defendant to keep track of Braker was to follow him whenever he went upon the street, at a distance of from 60 to 200 feet, and watch from a like distance his house, office, and the other places to which he went; the purpose being to keep Braker in ignorance of the fact that he was watched. And so successfully did the defendant accomplish the purpose that Braker only discovered he was being shadowed at or immediately preceding the time the subpœna was served, and then only because he was so informed by others. At no time did the defendant speak to, annoy, or disturb him in any way, except in so far as he was disturbed in his peace of mind when informed that he was being shadowed. To hold that such facts make the defendant guilty of a crime, within the provisions of the section of the Code referred to, seems to me preposterous. The only portion of the section of the Code which by any possibility can be held to apply to such facts is the provision that "any person who shall by any offensive or disorderly act * * * annoy or interfere with any person * * * in any place shall be guilty of a misdemeanor." The parties interested in the criminal proceeding had a right to produce witnesses in favor of their respective contentions. No one, I believe, would seriously contest this proposition; and if they had the right to produce witnesses, then it necessarily follows that they had the right to keep track of persons, to the end that a subpœna might be served when such persons were desired as witnesses. It might annoy the person desired as a witness to have a subpœna served upon him, and it likewise might annoy him to have his movements watched so that such subpœna could be served upon him; but such annoyance does not make the act of the process server or the one keeping track of him either offensive or disorderly, within the meaning of the statute. One has no absolute right to the use of the public streets, without being looked upon or his movements noted; nor has he the right to use the streets without being followed by another out of pleasure, curiosity, or for other purposes, so long as the act of the person following is not offensive or disorderly. No such right of privacy exists. Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828. An offensive or disorderly act, within the meaning of the section of the Code referred to, is one which in some way tends to a disturbance of the peace, as that crime is known to and determined by the common law. Here the acts of the defendant in no way tended to a disturbance of the peace. In fact, the complainant was not even annoyed until some one told him he was being shadowed. It is conceded, or, if not, it must be, that the defendant's acts were not disorderly, unless they annoyed the complainant. If this be true, then whether the acts of the defendant constituted a crime necessarily depended entirely upon the operation of Braker's mind; and I do not believe that the Legislature ever intended that the criminality of an act should depend upon the operation of a person's mind, which is incapable of being proved with any degree of accuracy, or disproved by any method known to the law. In other words, if the contention of the people be correct, the acts were not criminal unless known to Braker; but, if known to him, and they annoyed him, they thereupon became criminal acts. I can hardly conceive of a reasoning more fallacious or a rule more dangerous to personal liberty. That the Legislature never intended that such acts should constitute a crime seems to me clear, not only from the wording of the section of the Code itself, but from the statutes which permit detective agencies, upon the payment of a fee, to do business (chapter 422, p. 1120, Laws 1898, as amended by chapter 362, p. 1002, of the Laws of 1901). It cannot be possible that the Legislature, in enacting the statutes which permit the existence of detective agencies on the giving of a bond and the payment of a license fee, intended to authorize the commission of a crime; and it is equally clear it did not intend to exact a fee for a license from one whose employés could not pursue the business for which it was licensed. To hold, under the facts set out in this record, that the defendant is guilty of a crime for which he is punishable under the section of the Code hereinbefore cited is to hamper the administration of justice and prevent in no small degree the conviction of criminals who have violated, and the detection of those who are about to violate, the law. The complaint did not state, and the evidence did not establish, that the defendant had committed any crime, and he should have been discharged. For the foregoing reasons, hastily and briefly given, I think the judgment appealed from should be reversed, and the defendant discharged.

PEOPLE, Appellant, v. WINDHOLZ, Respondent. (Supreme Court, Appellate Division, Fourth Department. January 12, 1904.) Proceeding by the people of the state of New York against Louis Windholz. No opinion. Order affirmed, with $10 costs and disbursements.